UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOSHUA PAYNE,
    Plaintiff        :    CIVIL NO. 3:13-cv-2203

v.    :    (Judge Mariani)

C/O DUNCAN, et al.,
    Defendants    :

## MEMORANDUM

### Background

On August 21, 2013, Plaintiff Joshua Payne filed a civil rights action pursuant to 42 U.S.C. § 1983 naming as Defendants employees of the Pennsylvania Department of Corrections ("DOC"). (Doc. 1). The Complaint alleges constitutional violations for events that occurred while Plaintiff was incarcerated at the State Correctional Institution ("SCI") at Camp Hill, Pennsylvania. (Doc. 1, ¶ 4).[1] The named Defendants are Unit Manager Scott Whalen and Corrections Officers Duncan, Ziegler, Huber and John Doe. (Doc. 1, ¶¶ 5, 6). On January 28, 2014, Defendants filed a partial motion to dismiss the Complaint and a supporting brief. (Docs. 14, 15). They argue that Plaintiff's retaliation claim against Officer Huber should be dismissed as he failed to allege an adverse action sufficient to state a First Amendment claim, Plaintiff's Due Process claims related to his lost books or confiscated property should be dismissed because Plaintiff had an adequate post-deprivation remedy, Plaintiff's access to the courts claim should be dismissed because he failed to plead that he suffered an actual injury, and Unit Manager Whalen should be dismissed as a Defendant because Plaintiff failed to plead that Whalen was

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Dallas, Pennsylvania. (Doc. 1, ¶ 1).

personally involved in a constitutional violation. (Doc. 15, pgs. 3-10) Accordingly, Defendants request that: (1) Unit Manager Whalen and Officer Huber be dismissed from the Complaint entirely; and, (2) all claims against Officers Duncan and Ziegler be dismissed, except for a single claim of alleged retaliation related to the cell search. (Docs. 14, 15). On February 14, 2014, Plaintiff filed a brief in opposition to the partial motion to dismiss. (Docs. 17, 18).[2] The motion is ripe for disposition and, for the reasons set forth below, will be granted.

**Factual Allegations**

The Complaint alleges:

When Plaintiff was incarcerated at SCI-Camp Hill, he requested books through the property exchange. (Doc. 1, ¶ 8). On November 10, 2011, Officer Huber told Plaintiff that the books he requested were no longer in his stored property. (Doc. 1, ¶ 8). Officer Huber stated that the books were either destroyed or lost by the prior property officer. (Doc. 1, ¶¶ 8, 9). Plaintiff filed a confiscation slip and an unsuccessful grievance regarding the loss of these books. (Doc. 1, ¶ 10). Plaintiff also requested reimbursement for the lost property, but never received such reimbursement. (Doc. 1, ¶¶ 12, 16). On December 12, 2011, Officer Huber verbally harassed Plaintiff over the filing of the grievance and told Plaintiff he would no longer help him find the books. (Doc. 1, ¶¶ 13-15).

On March 7, 2013, Plaintiff's cell was searched by Special Management Unit ("SMU") Officers Duncan and Ziegler. (Doc. 1, ¶¶ 17, 18). During the cell search, Officer Duncan told Officer Ziegler that he was kicked out of the SMU because Plaintiff complained that Officer

---

[2] Documents 17 and 18 appear to be identical briefs submitted by Plaintiff. See (Docs. 17, 18).

2

Duncan gave him a razor to commit suicide. (Doc. 1, ¶ 19). Officer Duncan also told Officer Ziegler that Plaintiff liked to file grievances and lawsuits, therefore he should throw away Plaintiff's property to deter him from filing more grievances and lawsuits. (Doc. 1, ¶ 20). Plaintiff requested to see a Sergeant or Lieutenant so they could advise the Officers to not throw away his property. (Doc. 1, ¶ 21). Plaintiff was thereafter verbally harassed by Officer Duncan and strip searched. (Doc. 1, ¶¶ 22-25). Much of Plaintiff's property was removed from his cell during this search. (Doc. 1, ¶¶ 25, 26). Plaintiff requested a confiscation slip, which was denied by the Officers. (Doc. 1, ¶¶ 26, 27). During the cell search, the Officers removed over three hundred (300) pages of legal material related to two pending cases, thirty-seven (37) Islamic books, and nine (9) personal photos. (Doc. 1, ¶¶ 28, 31, 32). The destruction of the legal materials will hinder Plaintiff's ability to litigate his pending cases and challenge his criminal conviction. (Doc. 1, ¶¶ 29, 30). The removal and destruction of Plaintiff's religious books will prevent him from reading and studying about Islam. (Doc. 1, ¶ 31). The removal of the personal photos was done in mere retaliation. (Doc. 1, ¶ 32).

On March 11, 2013, Plaintiff complained to Unit Manager Whalen about the cell search and removal of his property. (Doc. 1, ¶ 33). Unit Manager Whalen stated that Officers Duncan and Ziegler only threw away Plaintiff's trash. (Doc. 1, ¶¶ 34, 35, 37). On March 20, 2013, Plaintiff filed an unsuccessful grievance related to the cell search and Unit Manager Whalen's conduct. (Doc. 1, ¶¶ 38, 41). Plaintiff appealed this grievance, but it was ultimately denied by the Central Office. (Doc. 1, ¶¶ 42-45).

**Standard of Review**

In rendering a decision on a motion to dismiss, a court should not inquire "whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. Innis v. Wilson, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557-58 (2007)); see also 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Id.; FED. R. CIV. P. 8(a)(2).

**Discussion**

    A.    **First Amendment, Retaliation Claim**

Plaintiff alleges that Officer Huber verbally harassed him and refused to help him find his lost books in retaliation for filing a grievance against him. (Doc. 1, ¶¶ 10, 12-15). In the partial motion to dismiss, Defendants argue that Plaintiff's retaliation claim against Officer Huber

should be dismissed because Plaintiff failed to allege an adverse action sufficient to state a First Amendment claim. (Doc. 15, pgs. 4-6). Upon review of the brief in opposition to Defendants' partial motion to dismiss, Plaintiff does not appear to respond to this argument. See (Docs. 17, 18).

A cause of action for retaliation under the First Amendment requires a plaintiff to prove that: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Importantly, a "prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim." Wicker v. Shannon, 2010 U.S. Dist. LEXIS 99777, *19-20 (M.D. Pa. 2010) (Caputo, J.) (dismissing due process claim and all but one retaliation claim), citing Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). To satisfy the second Rauser requirement, the prisoner must demonstrate "that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" Rauser, 241 F.3d at 333 (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). To show a causal link, a prisoner must prove "that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333. He must establish: "(1) an unusually suggestive proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." DeFranco v. Wolfe, 387 Fed. Appx. 147, 154 (3d Cir. 2010). If neither is proven, the prisoner "must show that, from the evidence in the record as a whole, the trier of fact should infer causation." Id. Because many

5

prisoners allege retaliation "when confronted with disciplinary action, district courts must view prisoners' retaliations claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." Sims v. Dragovich, 1999 U.S. Dist. LEXIS 8374, *9-10 (E.D. Pa. 1999).

"Once the initial showing is made by the prisoner, the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons reasonably related to a legitimate penological interest." DeFranco, 387 Fed. Appx. at 154-55 (citing Rauser, 241 F.3d at 334). The "courts should afford deference to decisions made by prison officials." Rauser, 241 F.3d at 334.

In the present matter, the first prong of Rauser is met as Plaintiff's filing of a grievance regarding the lost books is constitutionally protected conduct. However, Plaintiff failed to meet the second prong of Rauser because he has not demonstrated that he suffered an adverse action at the hands of prison officials. Allegations of threats and verbal harassment alone do not qualify as constitutional violations. See Jones v. Luzerne County Corr. Facility, 2010 U.S. Dist. LEXIS 86430, *20 (M.D. Pa. 2010) (Vanaskie, J.) ("words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer.").

As to Plaintiff's allegation that Officer Huber refused to help him locate his lost or destroyed books, Defendants contend that this retaliation claim should also be dismissed. (Doc. 15, pgs. 5-6). As stated above, the first prong of Rauser is satisfied as the filing of grievances constitutes protected conduct. However, Plaintiff again failed to meet the second prong of Rauser because Officer Huber's alleged refusal to help him find his books is not an adverse

6

action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Plaintiff alleges that Officer Huber refused to help him find his lost books, he has not alleged that Officer Huber was personally involved in the loss or destruction of the books. See Mincy v. Chmielsewski, 508 Fed. Appx. 99, 104 (3d Cir. 2013) (the loss of property constitutes a sufficient adverse action, however the Third Circuit Court of Appeals found no retaliation claim because the appellant failed to establish the necessary causal link as the officers were not personally involved in the alleged wrongdoing). This Court has stated that, "[g]enerally, a failure to act on a complaint is not a retaliatory or adverse action." Monn v. Gettysburg Area School Dist., 2013 WL 1345501 (M.D. Pa. 2013) (Caldwell, J.) (citing Taylor v. AFS Technologies, Inc., 2011 WL 1237609, at *4 n. 3 (D. Ariz. 2011) (failure to investigate is not an adverse action for a Title VII retaliation claim)). See also Alexander v. Fritch, 2010 WL 1257709, *18 (W.D. Pa. 2010) (stating that it is not clear that the rejection or denial of a grievance, or any similar action, constitutes an "adverse action" as required to state a retaliation claim), aff'd, 369 Fed. Appx. 867 (3d Cir. 2010).

Accordingly, the motion to dismiss the retaliation claim against Officer Huber will be granted.

## B. Fourteenth Amendment Claim

Plaintiff raises due process claims concerning the destruction of his property and alleges that his property was confiscated/ destroyed as a result of the cell search. (Doc. 1, ¶¶ 17-32). As stated above, Plaintiff alleges that over three hundred (300) pages of legal material, thirty-seven (37) Islamic books, and nine (9) personal photos were removed from his cell and discarded. (Doc. 1, ¶¶ 31, 32).

Defendants assert that Plaintiff's Fourteenth Amendment due process claims related to his lost or confiscated property should be dismissed because Plaintiff had adequate post-deprivation remedies in the form of a state tort action and the prison grievance procedure. (Doc. 15, pgs. 6-7). In response, Plaintiff acknowledges that he had a state tort remedy available, however he argues that the intentional confiscation of his property amounts to "a federal law claim that may be [l]itigated in federal court." (Docs. 17, 18, pg. 2). Plaintiff also acknowledges that the prison grievance procedure was available to him, however he states that when he attempted to use the grievance system, Officers Duncan and Ziegler retaliated against him. (Docs. 17, 18, pg. 2).

Ordinarily, the concept of "due process" requires some kind of hearing before the state can deprive a person of a protected interest. Zinermon v. Burch, 494 U.S. 113, 126 (1990). However, in cases of random and unauthorized deprivations of property the State cannot predict when the loss will occur and, therefore, is unable to provide a meaningful hearing before the deprivation takes place. In Parratt v. Taylor, 451 U.S. 527 (1981), the Supreme Court determined that, with respect to negligent, random and unauthorized acts by state actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of procedural due process if he or she has an adequate post-deprivation remedy. In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended the rule in Parratt to apply to intentional acts by state actors.

The filing of a state tort action is an adequate post-deprivation remedy. See Hudson, 468 U.S. at 535. Additionally, the Third Circuit Court of Appeals has held that the DOC's grievance procedure provides an adequate post-deprivation remedy, see e.g. Tillman v. Lebanon County

Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000), and the existence of this post-deprivation remedy forecloses any due process claim, Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa.1 995), even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D. Pa. 1996). "As [the inmate plaintiff] admits to having used the grievance procedure to attempt the return of his [property], he had access to an adequate post-deprivation remedy and even if there had been a violation of his liberty interest he was not denied the right to due process of law." Brooks v. DiGuglielmo, 2008 WL 5187529, * 6 (E.D. Pa. 2008) (footnote omitted). See also Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008) (stating, "[b]ecause prisons are constitutionally required to afford inmates only a post-deprivation remedy, we agree that the defendants' failure to give the inmates prior notice of their intended seizure of their materials did not violate the plaintiffs' Due Process rights").

In the present case, the prison officials were not obligated to give Plaintiff prior notice of the seizure of his items. There are legitimate penological reasons to conduct cell searches as they are a critical part of prison security. Even if not justified, Plaintiff was provided with a meaningful post-deprivation remedy with regard to the confiscated material. He availed himself of the remedy by filing a request slip and an inmate grievance concerning the confiscated material. (Doc. 1, ¶¶ 33, 37-45). Accordingly, Plaintiff's Due Process claims related to the confiscation or loss of his property will be dismissed.

### C. First Amendment, Free Exercise of Religion Claim

Regarding the alleged confiscation of Plaintiff's religious books, his claim is not only that the Officers deprived him of property, he also alleges Officers Duncan and Ziegler prevented him from studying his religion by discarding his books. (Doc. 1, ¶ 31). Plaintiff states that he is a

Muslim and is required to read and study Islamic books in order to understand and implement the religion into his every day life. (Doc. 1, ¶ 31).

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. Amend. I. It is undisputed that prisoners do not entirely forfeit all constitutional guarantees by reason of their conviction and confinement. Bell v. Wolfish, 441 U.S. 520, 545 (1979). Prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972). However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987). Further, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain Institutional security." Bell, 441 U.S. at 547-48.

The Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also O'Lone, 482 U.S. at 349. These interests include: "deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone, 482 U.S. at 348. This standard implies that a balancing test must be applied between the prisoner's claims and the prison's need of internal order and security. In Turner, the Court

set forth four factors to consider in reaching a decision. Turner, 482 U.S. at 89-90.[3]

Under the first Turner prong, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. In the present case, Defendants satisfy the first prong of Turner because there are legitimate penological interests in conducting cell searches. See Dockery v. Beard, 509 Fed. Appx. 107 (3d Cir. 2013) (search of inmate's cell was motivated by a legitimate penological interest).

The second Turner factor "requires a court to assess whether inmates retain alternative means of exercising the circumscribed right." Fraise, 283 F.3d at 518. Here, Plaintiff does not allege that he was actually prevented from exercising any religious right. He merely alleges that, as a Muslim, he is supposed to read and study about his religion and that the removal of his books prevented him from doing so. (Doc. 1, ¶ 31). Therefore, there was no need to find alternative means of allowing him to exercise his religious beliefs.

The final two Turner factors "focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources." DeHart, 227 F.3d at 57. Again, because Plaintiff does not allege that he was prevented from exercising his religious beliefs, these two factors do not support his claim.

Accordingly, to the extent that Plaintiff alleges a violation of his free exercise of religion,

---

[3] The Turner factors are: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether the prisoner has alternate means of exercising the right; (3) the impact the accommodation of the asserted constitutional right would have on guards and other inmates, and on the allocation of prison resources generally; and (4) what alternatives to the prison regulation exist. Turner, 482 U.S. at 89-90.

this claim will be dismissed.

### D. Access to the Courts Claim

Plaintiff alleges that Officers Duncan and Ziegler threw away over three hundred (300) pages of his legal materials relating to two pending cases, including exhibits, declarations, and affidavits, and that the destruction of these papers will hinder his ability litigate his cases and post-collateral challenges to his criminal conviction. (Doc. 1, ¶¶ 28-30). Defendants argue that Plaintiff's access to the courts claim should be dismissed because Plaintiff failed to plead that he suffered an actual injury. (Doc. 15, pg. 8). Plaintiff responds that the Complaint alleges actual injuries. (Docs. 17, 18, pg. 2).

"Prisoners have a right of access to the courts." Caldwell v. Beard, 305 Fed. Appx. 1, 3 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 352-53, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)). To state an access to the courts claim, a prisoner must (1) demonstrate that the underlying claim was arguable and nonfrivolous, (2) describe the official acts frustrating the litigation, and (3) identify a remedy that could not otherwise be obtained. Falciglia v. Erie County Prison, 279 Fed. Appx. 138, 140 (3d Cir. 2008) (dismissing the claim where the plaintiff provided no information concerning the underlying claim) (citing Christopher v. Harbury, 536 U.S. 403, 415, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002)). The prisoner-plaintiff must allege an actual injury to his ability to litigate a claim or his constitutional right of access to the courts has not been violated. Caldwell, 305 Fed. Appx. at 3. "Actual injury can be demonstrated by alleging that the defendants' actions resulted in the 'loss or rejection of a legal claim.'" McNeil-El v. Diguglielmo, 271 Fed. Appx. 283, 285-86 (3d Cir. 2008) (citing Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir.1997)). See also Caldwell, 305 Fed. Appx. at 3 ("An actual injury is

shown only where a nonfrivolous, arguable claim is lost.").

Plaintiff's claims are insufficient to show that he was denied access to the courts and he failed to allege an actual injury to his ability to litigate a claim. See McNeil-El, 271 Fed. Appx. at 285-86 (denying the plainitiff's claim that the seizure of legal materials deprived him of access to the courts because he did not "demonstrate that he was actually injured as a result of the seizure"). Plaintiff has not alleged that he has missed any deadlines or was precluded from making some arguably meritorious motion. In fact, Plaintiff's ability to present this current action indicates that his access to the courts has not been impeded. A review of the docket sheets of Plaintiff's other pending cases in this District reveals that he continues to litigate those cases. See Payne v. Doe, et al., No. 3:12-cv-2243 (M.D. Pa. 2012) (Mariani, J.); Payne v. Wetzel, et al., No. 3:12-cv-1932 (M.D. Pa. 2012) (Mariani, J.). Since the alleged seizure of Plaintiff's materials on March 7, 2013, Plaintiff has filed several documents in this action and in his other pending cases. Id. Therefore, this claim will be dismissed.

### E.     Personal Involvement Claim

Defendants assert that Unit Manager Whalen should be dismissed as a Defendant because Plaintiff failed to plead that he was personally involved in a constitutional violation. (Doc. 15, pgs. 8-11). Plaintiff responds that Unit Manager Whalen was involved in the alleged wrongdoings and he had actual knowledge of, and acquiesced in, the alleged wrongdoings of Officers Duncan and Ziegler. (Docs. 17, 18, pg. 3). Plaintiff also states that he spoke to Unit Manager Whalen about the alleged constitutional violations and filed grievances regarding these violations. (Docs. 17, 18, pg. 3).

A "defendant in a civil rights action must have personal involvement in the alleged

13

wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also West v. Atkins, 487 U.S. 42, 48 (1988); Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). Importantly, the filing of grievances or correspondence is insufficient to show the actual knowledge necessary for personal involvement. Rode, 845 F.2d at 1208; Croom v. Wagner, 2006 U.S. Dist. LEXIS 64915, *13 (E.D. Pa. 2006) (concluding that "neither the filing of a grievance nor an appeal of a grievance to [the Warden] is sufficient to impose knowledge of any wrongdoing"). Further, "inmates do not have a constitutional right to a prison grievance system[; therefore,] participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances." Wilkerson v. Schafer, 2011 U.S. Dist. LEXIS 25916, *17-18 (M.D. Pa. 2011) (Jones, J.) (internal citations omitted); see also Palmer v. Rustin, 2011 U.S. Dist. LEXIS 65678, *27-28 (W.D. Pa. 2011) ("The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement.").

Plaintiff alleges that he informed Unit Manager Whalen of the destruction of his property by Officers Duncan and Ziegler. (Doc. 1, ¶ 33). The Complaint also alleges that Plaintiff filed grievances which were denied by Unit Manager Whalen. (Doc. 1, ¶¶ 33, 37). Complaints to Unit Manager Whalen are not sufficient to establish his personal involvement with the alleged violations. See Pressley v. Beard, 266 Fed. Appx. 216 (3d Cir. 2008) (holding that the district court properly dismissed the Secretaries of the Department of Corrections and Superintendents because they were sued based simply on their failure to take corrective action when grievances or investigations were referred to them). Additionally, the denial of grievances by Unit Manager

Whalen is insufficient to establish his personal involvement. See Mincy, 508 Fed. Appx. at 104 (finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement" requirement); Ramos v. Pennsylvania Dept. of Corrections, 2006 WL 2129148, at *2 (M.D. Pa. 2006) (McClure, J.) (the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Accordingly, the motion to dismiss Unit Manager Whalen as a Defendant will be granted.

**Conclusion**

Defendants' partial motion to dismiss will be granted. Unit Manager Whalen and Officer Huber will be dismissed from the Complaint. Plaintiff will be permitted to proceed with his claim of retaliation against Officers Duncan and Ziegler. All other claims in the Complaint will be dismissed.

An appropriate Order follows.

Date: April 22, 2014                                    United States District Judge